CALVERT
vs
HOLLAND.

---

CHANCERY.

Case 105.

June 30.

Case stated as on the original bill and decree.

# Calvert *vs* Holland.

ERROR TO THE FLEMING CIRCUIT.

*Administrators.    Interest.    Bills of Review.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

THE original bill in this case was filed by Jackson and wife and Nancy Constant, against Benjamin Holland, as administrator of John Constant, deceased, and guardian of the female complainants and other heirs of said Constant, who were made defendants. The bill seeks an account, settlement and distribution of the estate, and also a conveyance to the heirs of Constant of a tract of land formerly owned by him, and of which the administrator is alleged to have improperly obtained the

title. It also impeaches the settlements made by the administrator in 1825 and 1827, during the tender infancy of the heirs and distributees, as false and fraudulent in omitting proper charges against him, and allowing improper credits. The case being heard upon bill, answer and exhibits the Court in      1845, decreed against the claim with respect to the land, and also that the County Court settlements should stand, except the credit therein allowed to the administrator of $125, on account of the dower of Constant's widow in the land in controversy; and as the addition of this sum to the balance against the administrator appearing on the settlements, increased it to $220 40¾ cents, the Court being of opinion that Jackson and wife had been paid in full, decreed one fifth of the said balance, viz: $44 18, with interest, from April, 1827, the date of the last settlement, to be paid to Spencer Calvert, as administrator of the complainant Nancy, who had intermarried with him, and died during the progress of the suit.

In March, 1846, Holland having paid $40 of the sum decreed to Calvert, and replevied the balance, filed his bill to enjoin the collection of said replevy bond, and to reverse the former decree and settlement, on the ground, 1st, that the credit for $125 had been improperly disallowed, and that he had actually paid that sum for the widow's dower; and, 2d, that John Constant had left seven children, as alleged in said original bill; that the allegation therein, that two of them were since dead, though put in issue by his answer, was wholly unsustained by proof, and yet the decree had been made on the assumption that there were but five distributees, and he had been decreed to pay one fifth of the entire sum to Calvert.

The case as presented by the bill of review.

Calvert, in his answer, denies that Holland had paid any thing for the dower of Mrs. Constant; and states that two of the seven heirs of Constant, viz: William and Garland, were in Maysville when the cholera raged there in 1833, and had not been heard of since, and that they were dead. Also, that a third, Ailsey, had been taken to Indiana, and was reported to be dead, as alleged in the original bill; and that a fourth, John, who

Answer to the bill of review.

was also in Maysville when the cholera was there in 1833, was believed to have died there at that time. H therefore claims to be entitled to at least a fourth in stead of a fifth of the estate; and reiterating the alle gations of the original bill, prays that the entire decre be reviewed, and that he may have his just portion c the estate in the hands of the administrator. This an swer is made a cross bill, to which Holland answered insisting on the correction of the decree, in the partic ulars pointed out in his bill of review. And withou answering specifically to any allegation of the cros bill, he reiterates, by reference, his former answer an his own bill—denies whatever is inconsistent therewith and says as the defendant desires a reviewal of th whole decree, if this be right he cannot object; if not he does object.

As there was not the slightest evidence in the origi nal case, that any thing had been paid for the dower o Mrs. Constant, though the allowance of that item wa particularly assailed in the bill, and as there is no pre tense of the discovery of evidence on the subject, there was no ground, either for an injunction or a review, or account of that matter. And although the assumptior in the decree, that there were but five heirs, was an ap parent error on that record, yet as upon the present record it may be assumed as against Holland, that Wil liam and Garland Constant were dead, there being in addition to his failure to answer the specific allegation of the cross bill in reference to them, and to prove tha they had been heard of since 1833, proof on the othe side that they had not been heard of since 1833, the ap parent error of decreeing to Calvert one fifth instead of one seventh of the estate, is removed by the fact now shown, that there were not more than five heirs. Ther was proof, however, in the case, upon the bill of re view, that Holland had paid Mrs. Constant for he dower in the land, which had been conveyed by he husband shortly before his death, with warranty against those claiming under him, and as the widow claime her dower, its fair value, so far as paid by Holland, wa a proper charge against his estate.

The Court, on hearing the case, decreed the allowance of $125 for the dower, as made by the County Court Commissioners, and assuming that by the allowance of this credit, the balance would be in favor of the administrator, decreed that Calvert should repay the $40 received under the former decree, with interest, perpetuated the injunction against the replevy bond, and dismissed Calvert's cross bill, with costs. If Calvert and the other defendants who answered the bill of review, had not concurred in the prayer for opening the first decree, there would, as already shown, have been no ground for changing it in either of the particulars complained of by Holland, but his bill should have been dismissed, and his injunction dissolved, because there was no ground for review or injunction on account of the dower, and because what seemed to be an error with respect to the number of heirs, is shown to have been correct in substance. And if the decree might have been corrected by allowing the credit for the dower claim on the proof afterwards adduced, still as that credit was in fact allowed by the Commissioners, in the settlement of February, 1825, it is manifest that its allowance, either by the first or last decree in this case, would leave the account just as it stood on that settlement. The balance against the administrator at the date of that settlement, was $117 14 cents, to be diminished only by the sum of $21 23¼, allowed in a subsequent settlement of April, 1827. This sum being credited upon the former balance, with its interest from the first settlement, and interest being charged upon the balance thus produced, from the date of the second settlement up to the first decree, the aggregate would be more than $200. And as Calvert had received only $40, which was less than one fifth of the sum to be divided, he was not only entitled to retain the $40, but also to receive something more, out of the sum secured by the bond; so that even upon this hypothesis, the decree on the bill of review is clearly erroneous, to the prejudice of Calvert.

But we are further of opinion, that as without the consent of Calvert, there was no ground for opening

CALVERT
*vs*
HOLLAND.

to the opening of the first decree and to a decree doing complete justice, the same should be opened and a decree doing complete justice between the parties made, tho' the cause is shown by complainant in the bill of review might not have been available in the original suit.

the first decree, justice and propriety required that, if opened at all, it should be opened upon the terms of the consent that is for a review of the entire decree, and for the correction of the errors against the heirs, as well of those against the administrator.

In this view of the case, we are of opinion that, although there was no sufficient ground for disturbing the title of the land as held by Holland, there is sufficient ground for overhauling the settlements relied on by the administrator, and that his accounts and settlements should have been referred to a Commissioner for enquiry and report, upon principles which we now proceed to state.

Settlements made by adm'rs. with the County Court and approved, *prima facia* correct.

1. The administrator should not, upon the pleadings in this case, be charged with any items, (except interest) not contained in the settlements; and should not be put to the proof of his vouchers therein allowed. And so far the settlements are to be taken as *prima facie* correct.

Where an adm'r. is the debtor to the estate, he is properly charged with interest from the time his debts are due, if the fund is not disbursed.

2. But as almost the entire credits of the estate consisted of three notes given for the land, payable in Kentucky currency, on designated days, and which the administrator was to pay for the land, he should be charged with the specie value of these notes, at the dates when they respectively fell due, with interest from the same periods, to be credited by the specie value of his actual payments of debts against the estate, and of other allowances, at the dates when made. And proof should be allowed to show the actual amounts paid, and whether in specie or paper money, and the value of the latter. But when no proof is made, the payments should be credited according to the face of the vouchers except where the charges made were not properly charges against the estate which the heirs may be allowed to prove.

Not proper to charge the recording of deeds to an adm'r. against the estate of which the grantee was the adm'r.

3. The settlement shows on its face that several small items are credited to the administrator which upon the evidence are not proper charges against the estate. As the administrator was not charged with the personalty, made no sale, and in fact alleges and proves that there was no personalty which properly constituted assets,

he expenses of inventory, appraisment and sale-bill, honld not be allowed.  Nor should he be allowed for he expenses of recording deeds to himself from Moren, and from the widow of Constant.

From the condition of the currency at the date of the transaction involved in the settlement, as · notoriously known, and to be inferred from the evidence in this case, and from the smallness of most of these transactions a presumption arises that many of the items allowed as credits to the administrator were paid in paper, and hould have been reduced to specie.  Most of the notes of the decedent exhibited as vouchers and credited at heir nominal amount, seemed to have been assigned to he administrator without recourse, whence it is probable that he may not have paid the full amount, and as already shown there are now credits for items clearly not chargeable to the estate, and the error of charging he administrator with only one half of the nominal amount of each of the three notes for $500 each due in December 1822, 1823, and 1824, without interest upon ither of these is also apparent.  For these errors and uspicious circumstances in the face of the settlement, he accounts are directed to be opened for proof and readjustment as to these particulars.  The allowances for ervices and expenses are not disturbed except as to he second trip to Indiana, and the currency in which llowed, as to both of which proof may be taken.

On the debts payable to the estate by the administrator himself or assumed by him, he is to be charged with urrent interest, subject to credits as above indicated, or debts paid and allowances, and also for payment to distributees, and for the balance appearing in favor of Calvert and other distributees parties to this suit a decree should be rendered against him in their favor.

Wherefore the decree is reversed, and the cause remanded for further proceedings and decree consistent with this opinion.

*Cavin* for plaintiff:  *Cord* for defendant.

CALVERT
*vs*
HOLLAND.

An adm'r. who purchases in the notes of his intestate, should only receive credit for his actual disbursement not their nominal amount-